

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

MUSTAPHA JALLOW, Plaintiff,

v.

THE UNIVERSITY OF CHICAGO, Defendant.

Case No.:

**RECEIVED**
MAY 16 2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# COMPLAINT

1:25-cv-05467
Judge Matthew F. Kennelly
Magistrate Judge M. David Weisman
RANDOM / CAT.2

## I. INTRODUCTION

1. Plaintiff Mustapha Jallow brings this action against Defendant The University of Chicago ("University") for unlawful retaliation and discrimination based on disability, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331 because this action arises under federal law.
3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because the acts and omissions giving rise to these claims occurred within this district, and Defendant resides in this district.

## III. PARTIES

4. Plaintiff Mustapha Jallow is an individual who resides in Chicago, Illinois.
5. Defendant The University of Chicago is a private university located in Chicago, Illinois, employing over 500 employees, and at all relevant times received federal financial assistance, making it subject to the Rehabilitation Act.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), Charge No. 440-2025-04232, alleging disability discrimination and retaliation.
7. On February 18, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.
8. Plaintiff files this Complaint within ninety (90) days of receiving the Notice of Right to Sue. A true and correct copy of the Notice is attached as Exhibit A.

# V. FACTUAL ALLEGATIONS

9. Plaintiff was employed as a Police Officer with the University of Chicago Police Department (UCPD) beginning in June 2021.

10. Plaintiff successfully performed his duties and received multiple awards for public safety, one being in a use of force scenario, both involving firearms.

11. On July 22, 2022, Plaintiff suffered a left knee injury while performing his duties, which substantially limited his ability to walk and required physical therapy over approximately 2–3 months.

12. After recovering, Plaintiff returned to full duty around October 2022.

13. On November 20, 2022, Plaintiff suffered a right ankle injury during an altercation with a hospital emergency room intruder, again limiting his ability to walk and perform major life activities.

14. Body-worn camera footage from November 20, 2022, captures Plaintiff telling Sergeant Dequaine that he physically removed the intruder from the ER area, stating, "I grabbed him and just put him out here," and "I physically grabbed him and pushed him out the door." Despite these statements and visible signs of force, Sergeant Dequaine instructed Plaintiff to simply "put notes in your name" instead of initiating a Tactical Response Report, which is standard procedure. No officers on scene requested a complaint refusal from hospital staff, despite multiple signs of trespass and agitation by the intruder.

15. The Defendant's supervisory staff, including Captain Randall Shannon without speaking to Plaintiff regarding the incident, notified Director Joanne Nee about Plaintiff's injury the same day via email, falsely claiming the plaintiff: "tripped on his own power".

16. Plaintiff was placed on injury leave for this second injury and underwent further recovery.

17. The Plaintiff was cleared for full duty on February 23, 2023, and returned to work on or about March 1, 2023.

18. Shortly after Plaintiff's return to work, Defendant escalated scrutiny against him and reinitiated an investigation tied to the November 20, 2022 incident.

19. The investigation was initiated by Sergeant Troy Dequaine on November 20, 2022, who omitted exculpatory facts and statements from his "To-From" report, despite Plaintiff's body-worn camera footage clearly capturing those statements. Dequaine also failed to document his body camera malfunction until his next shift.

20. Captain Randall Shannon falsely claimed Plaintiff failed to use de-escalation techniques, despite body-worn camera and hospital surveillance footage showing Plaintiff attempting verbal de-escalation.

21. Director Joanne Nee conducted a biased investigation, ignoring exculpatory evidence, reinforcing false narratives, and failing to document Dequaine's interview while fully transcribing Plaintiff's.

22. Director Nee issued her final investigation report recommending Plaintiff's termination on March 22, 2023.

23. Vice President for Safety and Security Eric Heath approved Plaintiff's termination in April 2023.

24. Plaintiff was terminated on April 11, 2024. The stated basis for his termination was as follows: "The investigation revealed that your excessive force did not comply with the UCPD policy, you failed to document your use of force per UCPD policy, and you were

untruthful to Sgt. Dequaine when you first denied that you used force. Your actions that brought about the complaint violated the University of Chicago Police Department and University Policies and do not meet expectations of the University of Chicago Police Department."

25. In the Step 2 grievance response, Deven Swanigan concluded that Plaintiff had no intent to deceive, but upheld excessive force allegations by parroting Director Nee's conclusions.

26. The grievance response further noted that Director Nee's investigation was subjective and failed to fully consider mitigating factors including Plaintiff's injuries and prior positive performance.

27. In a related proceeding, an Illinois administrative law judge ruled that Plaintiff's termination was not for misconduct. A true and correct copy of the Illinois Unemployment Appeal Decision is attached as Exhibit C.

28. During the unemployment benefits hearing, the University relied on testimony from Shontay Grant Pinder, who had no firsthand knowledge. The judge ruled her testimony hearsay, found Plaintiff credible, and ruled in Plaintiff's favor.

29. At the December 2024 arbitration hearing before Arbitrator Jules Crystal, Director Joanne Nee testified that Plaintiff's use of force was excessive because, in her words, "at that point he was not" performing a lawful task since "he was not effecting an arrest." This interpretation is inconsistent with UCPD General Order 108, which expressly authorizes reasonable force not only to effect an arrest, but also to perform a lawful task, overcome resistance, control a subject, or protect others from injury. Plaintiff's actions—removing a disruptive intruder who was refusing to follow commands from both Public Safety and Police Officers in a hospital emergency room—clearly fell within those permitted tasks. Director Nee's narrow and inaccurate reading of policy supports Plaintiff's claim that the investigation and termination were based on a retaliatory motive rather than any objective violation of department policy.

30. During the December 2024 arbitration hearing, it was revealed that Defendant did not issue discipline in an evenhanded manner. Other officers accused of similar or more serious policy violations received lesser discipline. In one such case, Officer Evans used force against a civilian who was acknowledged by all involved officers to be compliant. Despite this, the University issued Officer Evans only a five-day suspension. No justification offered by the Employer—whether based on length of service or subjective expressions of remorse—can explain the disparate treatment between Officer Evans and Plaintiff. This inconsistent application of discipline supports Plaintiff's claim that his termination was the result of retaliatory motive and bias, not a neutral or good-faith enforcement of policy.

31. Defendant submitted Professional Conduct Reports to the Illinois Law Enforcement Training and Standards Board (ILETSB) following Plaintiff's termination, damaging Plaintiff's professional reputation and reducing employment opportunities. The University's allegations could have exposed Plaintiff to potential criminal prosecution and civil liability.

32. Plaintiff states that an ongoing arbitration proceeding is pending to determine whether the University had just cause to terminate his employment.

33. Plaintiff was at all relevant times a "qualified individual with a disability" under the ADA and Rehabilitation Act.

34. Plaintiff's left knee and right ankle injuries, although temporary, substantially limited major life activities including walking, standing, and working for significant periods of time. As a result, Plaintiff was an individual with a disability within the meaning of the Americans with Disabilities Act and the Rehabilitation Act during the relevant time periods. See *42 U.S.C. § 12102(1)(A)* (defining disability to include "a physical or mental impairment that substantially limits one or more major life activities") and *42 U.S.C. § 12102(3)(A)* (temporary impairments may qualify if they are sufficiently severe).

35. Defendant's actions caused Plaintiff significant emotional distress, reputational harm, and economic losses.

# VI. CLAIMS FOR RELIEF

### Count I: Retaliation in Violation of the Americans with Disabilities Act (ADA)

32. Plaintiff re-alleges and incorporates all prior paragraphs.
33. Plaintiff engaged in protected activities under the ADA.
34. Defendant retaliated against Plaintiff by subjecting him to hostile scrutiny, a biased investigation, and termination.
35. Defendant's actions were willful and taken with reckless indifference to Plaintiff's federally protected rights.

### Count II: Discrimination in Violation of the Americans with Disabilities Act (ADA)

36. Plaintiff re-alleges and incorporates all prior paragraphs.
37. Plaintiff was a qualified individual with a disability.
38. Defendant discriminated against Plaintiff based on his disabilities by terminating his employment.
39. Defendant's stated reasons for termination were false and pretextual.

### Count III: Discrimination in Violation of Section 504 of the Rehabilitation Act

40. Plaintiff re-alleges and incorporates all prior paragraphs.
41. Defendant receives federal financial assistance and is subject to Section 504.
42. Plaintiff is an individual with a disability under the Rehabilitation Act.
43. Defendant terminated Plaintiff solely because of his disability, violating the Rehabilitation Act.

# VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Order Defendant to reinstate Plaintiff or award front pay;

B. Award back pay, lost benefits, and pension contributions;

C. Award compensatory damages up to $300,000 for emotional distress and reputational harm;

D. Award punitive damages under the ADA;

E. Enjoin Defendant from further retaliation against Plaintiff;

F. Award reasonable attorneys' fees and costs;

G. Award pre-judgment and post-judgment interest;

H. Grant such other relief as the Court deems just and proper.

# VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: May 7, 2025

/s/ Mustapha Jallow
Mustapha Jallow
810 West Grace Street Unit 1201
Chicago, IL 60613
773-844-3185
Mustapha Jallow

---

**Exhibit A:** EEOC Notice of Right to Sue (attached)

**Exhibit B:** Union Arbitration Brief (attached)

**Exhibit C:** Illinois Unemployment Appeal Decision (attached)

**Exhibit D:** Step 2 Grievance Response (attached)

**Exhibit E:** ILETSB Professional Conduct Reports (attached)